```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
```

| | | |
|---|---|---|
| OLGA AKOFIN as Personal Representative | : | 05 CV 2291 (CSH) |
| of Yuriy Akofin, deceased and personally | | |
| and Natalya Avtaeva Khasenevich as | : | |
| Personal Representative of Suleiman | | |
| Khasenevich and individually, | : | MEMORANDUM OPINION |
| | | AND ORDER |
| Plaintiffs, | : | |
| -against- | : | |
| JUMBO NAVIGATION, N.V., | : | |
| Defendant. | : | |

```
--------------------------------------------------------X
```

HAIGHT, Senior United States District Judge:

Plaintiffs in this action are foreign personal representatives of two foreign seamen who lost their lives as the result of an accident on board a foreign-flag vessel which occurred in American Territorial waters. Plaintiffs sue the foreign owner of the vessel to recover damages, invoking the Jones Act, 46 U.S.C. § 688, and the general maritime law of the United States.

Defendant moves to dismiss the complaint on the ground of *forum non conveniens*. For the reasons that follow, the motion is granted and the complaint will be conditionally dismissed.

**BACKGROUND**

On December 9, 2003 the M/V STELLAMARE lay at the port of Albany, New York for the purpose of loading a large, heavy generator for ocean carriage. The STELLAMARE flew the flag of the Netherlands and was registered in the Netherlands Antilles. She was owned by defendant Jumbo Navigation, NV ("Jumbo"), a Netherlands Antilles corporation.

During the loading operation, the STELLAMARE capsized, causing the death of two members of the vessel's crew, Yuri Akofin and Suleiman Khasenevich ("the decedents"). Plaintiffs Olga Akofin and Natalya Avtaeva Khasenevich, respectively the personal representatives of the decedents, bring this action to recover damages resulting from their deaths. The plaintiffs are citizens of the Russian Federation and reside in Russia. The decedents were citizens and residents of Russia. They were employed on board the crew of the STELLAMARE pursuant to an agreement entered into by Jumbo and the Maritime Transport Workers Union of Russia. Both decedents executed their personal contracts of employment with Jumbo in St. Petersburg.

The plaintiffs accepted US $ 60,000 and $75,000 respectively from Jumbo and executed in St. Petersburg, Russia releases with respect to the decedents' employment and deaths. The releases are dated January 19 and January 23, 2004.[1]

Plaintiffs filed their complaint in this Court on February 22, 2005. The complaint alleges that the action is brought under the Jones Act and the general maritime law of the United States. Complaint ¶ 1. Plaintiffs' claims are presently asserted against Jumbo, the owner of the STELLAMARE. The complaint originally listed three other companies as parties defendant, but the plaintiffs dismissed their claims against those entities by a stipulation endorsed by the Court on June 17, 2005, and the caption of the case has been amended accordingly.

Plaintiffs' theory of the case is spelled out in ¶¶ 21-24 of the complaint:

> 21.   Upon loading a generator, the vessel listed and/or capsized, causing the death of the

---

[1] The facts recited in text are drawn principally from the affidavit of Arnold van der Heul, executed December 23, 2005 ("Van der Heul Aff."), ¶¶ 5-7, and the exhibits attached thereto. Van der Heul is an officer of Kahn Scheepvaart, B.V., a Netherlands company situated in Rotterdam, which at the pertinent times acted as general agent for Jumbo.

> above-mentioned deceased crew members.
>
> 22. The disaster was due to the negligence of the master of the STELLAMARE and other employees of defendants of either defendant in failing to properly shift the ballasting of the vessel and for other acts of negligence and fault, including violation of safety regulations.
>
> 23. The improper loading and ballasting made the vessel unseaworthy causing the list and/or capsizing of the vessel and the vessel was otherwise unseaworthy.
>
> 24. Decedents drowned as a result of the capsizing of the vessel and prior to death had a period of severe and intense suffering.

The complaint contains a demand for trial by jury.

Jumbo now moves to dismiss the complaint. It asserts that the casualty and the resulting deaths are not covered by the Jones Act and do not fall within the general maritime law of the United States. While Jumbo acknowledges that the action falls within this Court's admiralty and maritime jurisdiction, it moves for dismissal on the ground of *forum non conveniens*.

## DISCUSSION

**I.  Applicability of the Jones Act and the General Maritime Law of the United States**

Defendant contends that in the circumstances of the case plaintiffs are not entitled to invoke the Jones Act and American general maritime law. I agree.

In the Jones Act, Congress made available to seamen certain rights and remedies against the owners of vessels upon which they serve. In the case at bar, the personal representatives of two deceased foreign seamen seek to invoke the Jones Act against a foreign employer.

"Although the Act, by its terms, may be invoked by alien seamen against alien employers,

the Supreme Court has limited its application to suits in which the defendant has some substantial contact with the United States." *Koupetoris v. Konkar Intrepid Corp.,* 535 F.2d 1392, 1396 (2d Cir. 1976). In determining whether the contacts in a given case are "substantial," the Supreme Court has identified the following contacts as worth of consideration: (1) the place of the wrongful act; (2) the law of the flag; (3) the allegiance or domicile of the injured party; (4) the allegiance of the shipowner; (5) the place where the contract of employment was made; (6) the inaccessibility of a foreign forum; and (7) the law of the forum. *Koupetoris*, 535 F.2d at 1396 (citing *Lauritzen v. Larsen*, 345 U.S. 571 (1953)). This is not an exclusive list; the Supreme Court subsequently held that the shipowner's base of operations is also an important contact and "there may well be others." *Hellenic Lines. Ltd. v. Rhoditis*, 398 U.S. 306, 309 (1970).

The applicability of the general maritime law of the United States is "subject to the same choice of law criteria as is the Jones Act." *Koupetoris v. Konkar Intrepit Corp.*, 402 F. Supp. 951, 954 (S.D.N.Y. 1975), *aff'd*, 535 F.2d 1392 (2d Cir. 1976). Thus, when the circumstances of a case reveal no substantial connection between the action and the United States, the plaintiff may invoke neither the Jones Act nor American general maritime law. *Flores v. Central Am. S.S. Agency, Inc.*, 594 F. Supp. 735, 737 (S.D.N.Y. 1984) (situation relied upon by plaintiff "clearly is not sufficient to render the Jones Act or general American maritime law applicable to this case."). In *Flores*, Judge Sprizzo also observed that "[t]he factors which have been considered most important by the courts are the law of the flag, provided it is not a flag of convenience, and the allegiance or base of operations of the shipowners." 594 F. Supp. at 737 (citing cases).

In the case at bar, the relevant factors clearly militate against the applicability of Jones Act or American general maritime law.

Although, as the plaintiffs stress in opposing defendant's motion, the accident occurred within American territorial waters, that is the only connection between this action and the United States and its laws. The location of the accident, standing alone, is not sufficient to establish that substantial connection between the action and the United States which is required by the cases interpreting the Jones Act and American general maritime law. That is particularly so where, as here, all the other relevant factors militate against the applicability of the statute or general maritime law to this particular casualty.

In *Koupetoris*, the Second Circuit said: "That the Plaintiff's injuries occurred off the coast of the United States is purely *fortuitous*, and a factor of minimal importance in supporting application of the [Jones] Act." 535 F.2d at 1396 (emphasis added). The Second Circuit's use of the phrase "occurred off the coast of the United States" and its earlier statement that the accident "occurred in waters off the coast of Maryland," *id.* at 1394, are curious, since District Judge Milton Pollack, whose order dismissing the complaint was affirmed by the Court of Appeals, said that in his opinion the plaintiff seaman brought his action to recover for injuries he allegedly sustained "while the ship was in Baltimore harbor." 402 F. Supp. at 953. It appears that the vessel involved in *Koupetoris* was operating under charter and called frequently at United States ports. *See* 535 F.2d at 1394.

For the purpose of evaluating the applicability of the Jones Act and American general maritime law to the case at bar, the presence of the STELLAMARE in Albany harbor at the time of the accident is equally fortuitous, indeed even more so. There is no evidence that the vessel called regularly or frequently at United States ports. A Coast Guard document submitted by plaintiffs shows that the STELLAMARE was a heavy lift vessel, specially constructed and equipped to lift,

transport and discharge large and heavy pieces of equipment, such as the generator being loaded at the time the vessel capsized. Such vessels ply the waters of the world, transporting heavy objects when and where the need arises.

This case thus falls squarely within the Second Circuit's minimization of the importance of the place of injury in the Jones Act and general maritime law calculus. Equally instructive is the decision of the Supreme Court in *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354 (1959). A Spanish seaman, injured in New York while aboard a Spanish vessel, sued the Spanish vessel owner under the Jones Act and the general maritime law of the United States. The Supreme Court affirmed the lower courts' dismissal of the plaintiff's claims against his employer. The Court noted that "Romero was injured while temporarily in American territorial waters," and followed its prior opinion in *Lauritzen v. Larsen*, 345 U.S. 571 (1953), which held that "the test of location of the wrongful act or omission, however sufficient for torts ashore, is of limited application to shipboard torts, because of the varieties of legal authority over waters she may navigate. The territorial standard is so unfitted to an enterprise conducted under many territorial rules and under none that it usually is modified to the more constant law of the flag." 358 U.S. at 384 (citing and quoting *Lauritzen*, 345 U.S. at 583-584). The Court went on to say in *Romero*:

> Although the place of injury has often been deemed determinative of the choice of law in municipal conflicts of laws, such a rule does not fit the accommodations that become relevant in fair and prudent regard for the interests of foreign nations in the regulation of their own ships and their own nationals, and the effect upon our interests of our treatment of the legitimate interests of foreign nations. To impose on ships the duty of shifting from one standard of compensation to another as the vessel passes the boundaries of territorial waters would not be only an onerous but also an unduly speculative burden, disruptive of international commerce and without basis in the expressed policies of this country. The amount and type

>of recovery which a foreign seaman may receive from his foreign
>employer while sailing on a foreign ship should not depend on the
>*wholly fortuitous* circumstance of the place of injury.

*Id.* (emphasis added).[2]

Given these precedents, I give little weight to the fact that the place of injury was within the territorial waters of the United States in determining the applicability of the Jones Act and the general maritime law of this country to the case at bar.[3]

The other factors summarized by the Second Circuit in *Koupetoris* all militate against applying the Jones Act and American general maritime law in this case. Plaintiffs' argument that the law of the flag should be discounted as one of "convenience" because the STELLAMARE flew the Netherlands flag but was registered in the Netherlands Antilles disregards the uncontested facts

---

[2] The plaintiff in *Romero* also asserted claims against American corporations which, while not owning the vessel, were involved in her operation. The Supreme Court held that the District Court should not have dismissed those claims. That holding is not pertinent to the case at bar.

[3] The first factor articulated in *Lauritzen* and *Koupetoris* is "the place of the wrongful act." Defendant argues in its brief at page 4: "Thus, while on its face, the wrongful act allegedly occurred in Albany, New York, upon deeper examination, this factor may well support the Netherlands too." The "deeper examination" to which counsel refers arises from the allegation in plaintiffs' complaint that "improper loading and ballasting" caused the STELLAMARE to capsize during the loading at Albany. Defendant submits an affidavit by an officer of the company acting as Jumbo's general agent for management of the vessel, situated in Rotterdam, which recites that a superintendent of that company, one Paul Kuiken, "prepared the loading and ballasting computer programs and the loading and ballasting plans" in the agent's office in Rotterdam, thereafter sending the plans to the master of the STELLAMARE in New York. Affidavit of Arnold van der Heul at ¶ 8. These circumstances lead defendant to suggest that any wrongful act (which defendant does not concede) took place in Rotterdam, although the resulting injury was inflicted in New York. That inference is weakened somewhat by the acknowledgment in van der Heul's affidavit at ¶ 8 that "Superintendent Kuiken may have amended the plans and program while in New York." While I note defendant's suggestion, even if it were clear that the wrongful act and the resulting harm both took place in the port of Albany, the conclusion I reach with regard to the applicability of the Jones Act and the general maritime law would be the same.

that the "Netherlands Antilles is an autonomous country that is within the Kingdom of the Netherlands. Registration of ships in the Netherlands Antilles is governed by Netherlands law. Due to the status of the Netherlands Antilles as part of the Kingdom of the Netherlands, many Dutch shipowners who operate vessels from the Netherlands register their ships in the Netherlands Antilles." Van der Heul Aff. ¶ 9. No doubt such Dutch shipowners have bottom-line reasons for doing so, but the requirements for registration are the same, including adherence to international conventions and rules for the safety of life at sea. Van der Heul Aff., Ex. B.

The decedents were Russian citizens and residents, and so are the plaintiffs, their personal representatives. Jumbo, the shipowner, is a Netherlands Antilles corporation. The seamen entered into their contracts of employment with the defendant in Russia. A foreign forum is accessible, because Jumbo has agreed to appear and to defend any lawsuit filed in the courts of Russia, the Netherlands or the Netherlands Antilles.[4] The seventh factor, the law of the forum, "is irrelevant here because this litigation is in the courts of the United States." *Carbotrade,* 96 F.3d at 91.

For the foregoing reasons, I conclude without difficulty that the Jones Act and the general maritime law of the United States do not apply to this action.

That conclusion does not deprive this Court of subject matter jurisdiction (although it is fatal to plaintiffs' demand for a jury trial). The Court may still exercise its admiralty and maritime jurisdiction, pursuant to 28 U.S.C. § 1333(1). However, Jumbo moves to dismiss the complaint on the ground of *forum non conveniens.* I turn to that aspect of the case.

---

[4] The Second Circuit has observed, citing *Lauritzen*, that the accessibility of the foreign forum factor "is more pertinent to a *forum non conveniens* test than to a choice of law test," *Carbotrade, S.p.A. v. Bureau Veritas*, 99 F.3d 86, 91 (2d Cir. 1996). The application of the *forum non conveniens* doctrine to the case at bar is discussed in Part II *infra.*

**II.**     *Forum Non Conveniens*

*Forum non conveniens* is applicable to admiralty cases. That is illustrated by *Koupetoris*, where the District Court first held that the Jones Act and American general maritime law did not apply, then dismissed the seaman's admiralty claim on *forum non conveniens* grounds. The Second Circuit affirmed on both grounds. *See* 535 F.2d at 1397 (affirming *forum non conveniens* dismissal after affirming holding that Jones Act and general maritime law did not apply).

The doctrine of *forum non conveniens* allows a court to dismiss an action "even if the court is a permissible venue with proper jurisdiction over the claim." *Carey v. Bayerische Hypo-Und Verinsbank AG*, 370 F.3d 234, 237 (2d Cir. 2004) (citation omitted). A district court dismisses a complaint where, on balance, the resolution of the claim in an adequate alternative forum would be more convenient and more just. *See R. Maganlal & Co. v. M.G. Chemical Co.*, 942 F.2d 164, 167 (2d Cir. 1991) ("The central purpose of a *forum non conveniens* inquiry is to determine where trial will be most convenient and will serve the ends of justice."). The relevant factors are well established. "The first step in a *forum non conveniens* analysis is for the court to establish the existence of an adequate alternative forum. Second, the court must determine the level of deference to accord the plaintiff's choice of forum. Third, the court must weigh the public and private interests in order to determine which forum will be the most convenient and will best serve the ends of justice." *USHA (India), Ltd. v. Honeywell Int'l, Inc.*, 421 F.3d 129, 134 (2d Cir. 2005). A decision to dismiss for *forum non conveniens* "lies wholly within the broad discretion of the district court and may be overturned only when we believe that discretion has been *clearly abused*." *Id*. (emphasis in original and citations omitted).

In the case at bar, all these factors militate in favor of a *forum non conveniens* dismissal. I

discuss them in order.

**1.    Adequacy of the Alternative Forums**

An alternative forum is adequate for *forum non conveniens* analysis "if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 75 (2d Cir. 2003). This does not mean that the alternative forum must afford the same degree of relief to the plaintiff. *See, e.g., Fitzgerald v. Texaco, Inc.*, 521 F.2d 448, 453 (2d Cir. 1975) ("A district court has discretion to dismiss an action under the doctrine of *forum non conveniens*, however, even if the law applicable in the alternative forum may be less favorable to the plaintiff's chance of recovery.") (citation omitted).

In the case at bar, Jumbo contends that "courts are available in [the] Netherlands and Netherlands Antilles to hear any claims of the survivors of the two deceased seafarers. In addition, the Russian courts are also available to serve as a forum for any claim made by the survivors of the seafarers." Van der Heul Aff. ¶ 12. Moreover, "Jumbo Navigation has agreed to appear in any lawsuit commenced by the Plaintiffs in Russia, [the] Netherlands or the Netherlands Antilles." *Id*. ¶11. The parties trade conflicting affidavits of Russian lawyers as to whether the Russian courts would assume jurisdiction over plaintiffs' claims. I need not resolve that dispute because the plaintiffs do not suggest that the Netherlands or Netherlands Antilles courts would not afford them an adequate remedy.

It is apparent that an alternative adequate forum exists for the resolution of plaintiffs' claims.

**2.    Deference Due to the Plaintiffs' Choice of Forum**

The Second Circuit has held that to succeed on *forum non conveniens* a defendant, having first shown the existence of an adequate alternative forum, must next overcome the deference due

a plaintiff's choice of forum. "Because there is ordinarily a strong presumption in favor of plaintiff's choice of forum, that choice will not be overcome unless the relevant private and public interest factors weigh heavily in favor of trial in the alternative forum." *R. Maganlal*, 942 F.2d at 167.

The plaintiffs at bar, as do all plaintiffs similarly situated, contend that their choice of forum should be accorded a high degree of deference. That contention must be evaluated in the light of the Second Circuit's later *en banc* opinion in *Iragorri v. United Techs. Corp.*, 274 F.3d 65 (2d Cir. 2001), in which the court of appeals construed Supreme Court cases as instructing that

> (1) a plaintiff's choice of her home forum should be given great deference, while (2) a foreign resident's choice of a U.S. forum should receive less consideration, as representing consistent applications of a broader principle under which the degree of deference to be given to a plaintiff's choice of a forum moves on a sliding scale depending on several relevant considerations.

*Id*. at 71. Foremost among those considerations, in the *Iragorri* Court's view, is whether a plaintiff chose a particular forum for genuine convenience or for tactical advantage. The Court went on to say:

> The more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice. Stated differently, the greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for *forum non conveniens*. . . . On the other hand, the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons . . . the less deference the plaintiff's choice commands and, consequently, the easier it becomes for the defendant to succeed on a *forum non conveniens* motion by showing that convenience would be better served by litigating in another country's courts.

*Id*. at 71-72.

Given the private and public interest factors discussed *supra*, I think it plain that the plaintiffs, Russian citizens with no contacts with the United States, chose this District for "tactical advantage" rather than for "genuine convenience."  Consequently that choice will be accorded little deference.

**3.      Private Interest Factors**

"Private interest factors" is one of the two sets of factors identified by the Supreme Court in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947), the other being "public interest factors."  Private interest factors include "the relative ease of access to sources of proof, availability of compulsory process for attendance of  unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Id*. at 508.  The Second Circuit has characterized these factors as relating to "the convenience of the parties," *Iragorri*, 274 F.3d at 73, and went on to say: "In considering these factors, the court is necessarily engaged in a comparison between the hardships defendants would suffer through the retention of jurisdiction and the hardships the plaintiff would suffer as the result of dismissal and the obligation to bring suit in another country."  *Id*. at 74.

In the case at bar, the private interest factors weigh heavily in favor of dismissal.  Counsel for plaintiffs says: "Proof of liability is available only in New York."  Affidavit of Paul S. Edelman, Esq. ("Edelman Aff.") ¶ 4.  It is difficult to discern the basis for counsel's assertion.  The plaintiffs reside in Russia and have no knowledge about how or why the STELLAMARE capsized.  On plaintiffs' own theory of liability, as pleaded in the complaint at ¶ 23, the vessel's capsizing was

caused by her "improper loading and ballasting." Kuiken, the superintendent who prepared the loading and ballasting computer programs and plans for the voyage, performed that work in Rotterdam and resides in Rotterdam. Van der Heul Aff. ¶ 8. Plaintiffs make much of the fact that Kuiken may have come to New York to amend those programs and plans. Assume that Kuiken did so: it is of no moment in the *forum non conveniens* analysis because no one suggests that Kuiken settled down in New York and is currently present in the state. He is a vital witness, and he lives in the Netherlands. The key witnesses from the STELLAMARE are her officers at the time of the casualty: the master, the chief engineer, and the mates (who, particularly the chief officer, are usually directly concerned with the loading and unloading of cargo). All these officers, as well as the entire crew of the STELLAMARE at the time of the casualty, reside in Russia. Van der Heul Aff. ¶¶ 15, 19-20. Only the chief engineer and the second officer are still employed by Kahn, but on vessels that do not call regularly at New York. *Id.* ¶ 20. The technical and other documents probative of liability are presumably in the files of Kahn, the Rotterdam general agent who at the pertinent times performed "the commercial and technical management" of the STELLAMARE. *Id.* ¶ 13. The STELLAMARE "was sold shortly after the casualty" and Van der Heul says he does not know "where the vessel is now." *Id.* ¶ 22. Presumably this experienced ship's agent could find out – it is not easy to conceal an ocean-going heavy list vessel – but the significant point is that, assuming without deciding that an inspection of the vessel would yield evidence relevant to the casualty in suit, there is no evidence that she is or will be within this District or at any United States port.

Against this flood of indications that this forum would inconvenience the parties' litigation efforts, the plaintiffs construct only the flimsiest of dikes. Plaintiffs say that the Coast Guard conducted a marine casualty investigation into this fatal accident in American waters. And so it did;

but the governing statute provides that no part of the Coast Guard's report, "including findings of fact, opinions, recommendations, deliberations, or conclusions," would be admissible at the trial of the action. 46 U.S.C. § 6308(a). If the Coast Guard inquiry unearthed local witnesses with probative evidence on liability, plaintiffs do not say who they are. Plaintiffs say that "[a]n American surveyor overseeing the loading" was seriously injured," and that he apparently lives in New Jersey, Edelman Aff. ¶¶ 1, 7(4); but there is no indication that his responsibilities extended to the manner in which the STELLAMARE was ballasted and loaded, unlike Kuiken, the Kahn superintendent. Plaintiffs say that "[t]here is a large COGSA cargo claim pending for the loss of the large GE generators involved." *Id*. And so there is, and a suit on the claim was filed in this Court and assigned to Judge Jones; but the issue is whether the generators should be regarded as "packages" for COGSA limitation of liability purposes.

There is nothing in these considerations, singly or in combination, that overcome Jumbo's showing that the private interest factors militate in favor of dismissal.

**4.      Public Interest Factors**

The public interest factors are summarized in *Gilbert*, 330 U.S. at 508-09:

> Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

While the references in *Gilbert* to "a diversity case" and "the state law" governing the case suggest a choice between the courts of two states of the United States, it is well settled that the *forum non conveniens* factors articulated in *Gilbert* apply where the proposed alternative forum is in a foreign country. *See, e.g., Alcoa Steamship Co. v. M/V Nordic Regent*, 654 F.2d 147 (2d Cir. 1980) (*en banc*) (applying *Gilbert* factors in admiralty action; complaint filed in Southern District of New York dismissed on *forum non conveniens* grounds in favor of courts of Trinidad).

In the case at bar, it requires no further analysis to demonstrate that the public interest factors also militate in favor of dismissal of this action on the ground of *forum non conveniens*.

## CONCLUSION

For the foregoing reasons, the complaint in this case is dismissed, without prejudice to the merits on the ground of *forum non conveniens*.

That dismissal is conditioned on the following:

1. The defendant Jumbo Navigation, N.V. shall, with respect to any action commenced by the plaintiffs within two years from the date of this opinion in the courts of the Netherlands, the Netherlands Antilles, or Russia, cause an appearance to be filed in such action, defend such action on the merits, and waive any defense based upon the statute of limitations or time bar which might otherwise be available under the law of that jurisdiction.

2. If the defendant fails to abide by any of these conditions, then the plaintiffs may reapply to this Court for reinstatement of the captioned action, and that application will be granted. In such event, the period of time between the date of this Opinion and Order and the date of the plaintiffs' application for reinstatement of the action in this Court shall not be included in any computation of

laches.

It is SO ORDERED.

Date:  New York, New York
       March 30, 2007

/s/ Charles S. Haight Jr.

CHARLES S. HAIGHT, JR.
SENIOR UNITED STATES DISTRICT JUDGE